151 P.3d 243 (2007)
Armen YOUSOUFIAN, Appellant,
v.
The OFFICE OF RON SIMS, King County Executive, a subdivision of King County, a municipal corporation; the King County Department of Finance, a subdivision of King County, a municipal corporation; and the King County Department Stadium Administration, a subdivision of King County, a municipal corporation, Respondents.
No. 57112-5-I.
Court of Appeals of Washington, Division 1.
February 5, 2007.
*244 Michael G. Brannan, Law Office of Michael G. Brannan, Seattle, WA, Rand F. Jack, Brett & Coats, Bellingham, WA, for Appellant.
John Robert Zeldenrust, Office of the Prosecuting Attorney, Seattle, WA, for Respondents.
Michele Lynn Earl-Hubbard, Davis Wright Tremaine LLP, Seattle, WA, Amicus Curiae on behalf of Allied Daily Newspapers of Washington, The Evergreen Freedom Foundation, The Washington Newspapers Publishers Association, The Washington Coalition for Open Government, The Seattle Community Council Federation, Reporters Committee for Freedom of the Press.
GROSSE, J.
¶ 1 The purpose of Washington's Public Disclosure Act is best served by basing penalties principally on the degree of the offending agency's culpability. Because King County's conduct in this case was grossly negligent, a penalty at the low end of the statutory range is unsustainable. We thus reverse and remand to the trial court for a determination of an appropriate penalty that is consistent with this opinion.

FACTS
¶ 2 Once again, this court is called upon to evaluate whether the trial court abused its discretion in determining the amount of the per day penalty imposed upon King County for its failure to reasonably comply with Armen Yousoufian's request for information under Washington's Public Disclosure Act (PDA).
¶ 3 In 1997, Yousoufian requested King County to provide him with documents related to the public financing of a new football stadium for the Seattle Seahawks. After meeting numerous roadblocks in his efforts *245 to obtain the documents, Yousoufian sued King County under the PDA. In September 2001, after a trial before the King County Superior Court, the trial court found King County had violated the PDA and imposed a $5 per day penalty on King County for its failure to reasonably comply with Yousoufian's request.
¶ 4 Specifically, the trial court found King County's responses to Yousoufian's requests were untimely and demonstrated a lack of good faith. The court stated in its finding of fact and conclusions of law:
Washington's Public Disclosure Act requires agencies to act with due diligence and speed in responding to requests for public documents. The Act imposes on agencies an obligation to devote their best efforts to providing the "fullest assistance possible" to citizens making public disclosure requests. If a request is ambiguous or broad, the statute mandates that the agency make an effort to clarify and narrow the request. A failure to fulfill these obligations amounts to a lack of good faith under the statute.
The Court does not find that there was "bad faith" in the sense of intentional nondisclosure. However, the Court finds that there was not a good faith effort by the involved county staff to read, understand, and respond to Mr. Yousoufian's letter in a timely, accurate manner. There was a complete lack of coordination among the departments and staff assigned to the task, and absolutely no effective oversight of this PDA request. Certainly, King County did not render full assistance to Mr. Yousoufian as required under the statute. Nor was there an effective system for tracking a PDA request to ensure compliance with the law.
The County's lack of good faith was also apparent in misrepresentations made in correspondence to Mr. Yousoufian. Many of the letters contained incorrect statements, both factual and legal. No effort was made to verify the accuracy of those statements.
In summary, the County was negligent in the way it responded to Mr. Yousoufian's PDA request at every step of the way, and this negligence amounted to a lack of good faith. There was a lack of coordination among the departments and there was a lack of oversight by the Executive's Office. The people given the responsibility for this PDA request had only a rudimentary understanding of the County's responsibilities under the PDA and apparently were not trained in how to locate and retrieve documentation, or didn't take the trouble to do so. No one ever took the time to carefully read Mr. Yousoufian's letter. If they claimed to be confused about the request, there was inadequate communication with Mr. Yousoufian to clear up the confusion. There were broad assumptions that Mr. Yousoufian was being difficult or unreasonable, assumptions which may have affected how people responded to his requests.
. . . .
Although there was an [sic] clear mishandling of Mr. Yousoufian's request, the Court finds no intentional nondisclosure or intent to conceal. Although not effective, it appears that the county's intent was to be responsive to Mr. Yousoufian's request.
¶ 5 On appeal, we reversed the per day court imposed penalty, stating that "the trial court's findings of gross negligence and a lack of good faith by the county do not support the court's imposition of a minimum penalty of $5 per day."[1] We explained:
In the final analysis, it seems clear that the county's violation of the PDA was due to poor training, failed communication, and bureaucratic ineptitude rather than a desire to hide some dark secret contained within its files. We therefore agree with the trial court's characterization of the county's conduct as grossly negligent, but not intentional, withholding of public records.[2]
Furthermore, we concluded:
Although we afford great deference to the trial court in this matter, we are convinced *246 that the trial court's award of the minimum statutory penalty must be reversed. While the trial court stopped short of finding bad faith in the sense of intentional nondisclosure, the court's findings reflected strong disapproval with what the court saw as gross negligence by the county in responding to Yousoufian's public records request. Those findings do not support the court's imposition of a minimum penalty of $5 per day. The minimum statutory penalty should be reserved for instances of less egregious agency conduct, such as those instances in which the agency has acted in good faith but, through an understandable misinterpretation of the PDA or failure to locate records, has failed to respond adequately.[3]
In so stating, we also held the trial court erred by relying on the attorney fee award as a basis on which to award a minimum penalty where a higher penalty would otherwise be appropriate. We thus remanded to the trial court for a determination of the appropriate penalty above the statutory minimum.
¶ 6 The case was then appealed to the Washington Supreme Court. There, King County conceded that a penalty greater than the minimum was justified in this case; however, it claimed the Court of Appeals erred in characterizing the $5 daily penalty as the minimum penalty. According to King County, "the trial court actually increased the total penalty by assessing the per day penalty against the number of days each of the 10 groups of records were withheld rather than basing the penalty on two requests, as the county proposed."[4] The Supreme Court rejected this argument, as had the Court of Appeals, because King County had failed to challenge on appeal the manner in which the records were grouped. The Supreme Court explained:
The process for determining the appropriate PDA award is best described as requiring two steps: (1) determine the amount of days the party was denied access and (2) determine the appropriate per day penalty between $5 and $100 depending on the agency's actions. The determination of the number of days is a question of fact. However, as discussed above, the determination of the appropriate per day penalty is within the discretion of the trial court.
The Court of Appeals correctly ignored the manner in which the records were grouped because the county failed to assign error to the trial court's method of calculation. Therefore, we agree with the Court of Appeals that assessing the minimum penalty of $5 a day was unreasonable considering that the county acted with gross negligence.[5]
The Supreme Court thus remanded the case to the trial court for an imposition of the appropriate penalty.
¶ 7 While the majority remained silent on what that penalty should be, other members of the court offered their opinions. In his concurrence/dissent, Justice Chambers disagreed with the majority's conclusion that the trial court abused its discretion in assessing the minimum daily penalty of $5. Justice Tom Chambers argued that issues involved in public disclosure requests may become complex and raise many issues that should be left to the sound discretion of the trial court. On the other hand, Justice Richard Sanders argued in his concurrence/dissent that a penalty at the upper range of the $5 to $100 scale be applied in this case.
¶ 8 On remand, the trial court imposed a penalty of $15 per day, using as guidance a prior decision from this court, A.C.L.U. of Washington v. Blaine School District No. 503.[6] Yousoufian appeals, claiming the facts of this case warrant a higher penalty.[7]

*247 ANALYSIS
¶ 9 We review the trial court's determination of the daily penalties under the PDA for an abuse of discretion.[8] Here, the only remaining issue is the amount of the daily penalty imposed on King County. The grouping of the documents and the number of penalty days has been resolved.
¶ 10 The case law states that a showing of bad faith or economic loss "are factors for the trial court to consider in determining the amount to be awarded" for a violation of the PDA.[9] Furthermore, "[w]hen determining the amount of the penalty to be imposed the `existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider.'"[10]
¶ 11 When the Supreme Court agreed with us that the trial court abused its discretion in awarding the minimum penalty it did so simply with instructions to award a penalty above the statutory minimum. The majority did not provide any additional insight into how the trial court should exercise its discretion other than that the existence or absence of the agency's bad faith is the principal factor the trial court must consider. Furthermore, in the context of explaining its decision why the PDA does not require the assessment of per day penalties for each requested record the Court stated:
Although the PDA's purpose is to promote access to public records, this purpose is better served by increasing the penalty based on an agency's culpability than it is by basing the penalty on the size of the plaintiff's request.[11]
¶ 12 Yousoufian argues that trial courts need more guidance in setting PDA award amounts and proposes that awards under the PDA be made according to a scale that utilizes the entire extent of the $5 to $100 range, with typical violations falling at the middle of the range and violations involving lesser and greater degrees of agency culpability spread out evenly along the scale. He argues that the application of such a scale would place this case closer to $100 than $5, considering King County's actions constituted gross negligence. At oral argument, Yousoufian also proposed several factors that the court could consider in exercising its discretion. This approach is similar to the one proposed by Justice Sanders in his concurrence/dissent. As Justice Sanders wrote:
As such, the default penalty from which the trial court should use its discretion is the half-way point of the legislatively established range: $52.50 per day, per document. The trial court could then apply various criteria to shift the per diem penalty up or down.
Mr. Yousoufian suggests the court consider (1) the extent of any intent to withhold documents the agency knows are subject to disclosure, (2) the agency's failure to adopt and maintain a reasonable indexing system to ensure prompt compliance with the PDA's requirements, (3) the degree of public concern affected by the disclosure of the documents, (4) the need to deter future violations, (5) whether the agency acted in good faith relying on an exemption to the PDA's requirements or the extent of the agency's diligence to comply with the PDA request, and (6) any economic loss suffered by the litigant.
Applying the aforementioned criteria, I find a penalty in the upper range to be necessary here.[12]
¶ 13 Because it appears the Supreme Court majority implicitly declined to adopt the factors enumerated by Justice Sanders in his dissent and offered to this court at oral argument, we will not adopt those factors here. However, we agree with Yousoufian *248 that the purposes of the PDA would be better served by providing the trial courts with some guidance as to how to apply the Supreme Court's emphasis on agency culpability to the PDA penalty range.
¶ 14 In this case, both the Court of Appeals and the Supreme Court characterized King County's conduct as gross negligence. This is the law of the case. On remand, the trial court correctly pointed out that missing from the opinions of the appellate courts was a definition of what gross negligence was and suggested that such a definition would be a logical place to start in determining King County's degree of culpability. The trial court stated:
I think before you start telling us that the Court of Appeals was wrong in recharacterization, we ought to look at the definitions of what gross negligence is.
If we're going to say the finder of fact misapplied the evidence to the law, then what was the law they were dealing with in terms of the definition of gross negligence?
Court of Appeals didn't address it, Supreme Court didn't address it. Certainly, if this had been a jury trial, and I was asking a jury to apply the law to the facts, I would tell them what the law is, including the definition of gross negligence.
The trial court then suggested that the Washington Pattern Jury Instructions (WPI) might be a good place to find a definition of gross negligence.
¶ 15 If, as the Supreme Court has held, culpability is to be the principal factor upon which PDA penalties are awarded, then it only makes sense that degrees of culpability such as those defined in the WPI be used as a guide with which to locate violations of the PDA within the penalty range. As the law stands now, a simple emphasis on the presence or absence of the agency's bad faith does little more than to suggest what the two poles are on the penalty range and is inadequate to guide the trial court's discretion in locating violations that call for a penalty somewhere in the middle of the expansive range the legislature has provided.
¶ 16 The WPI defines several degrees of culpability in the civil context. These include, in increasing degrees of culpability, negligence, gross negligence, wanton misconduct and willful misconduct. "Negligence" is defined in the WPI as:
the failure to exercise ordinary care. It is the doing of some act that a reasonably careful person would not do under the same or similar circumstances or the failure to do some act that a reasonably careful person would have done under the same or similar circumstances.[13]
"Gross negligence" is:
the failure to exercise slight care. It is negligence that is substantially greater than ordinary negligence. Failure to exercise slight care does not mean the total absence of care but care substantially less than ordinary care.[14]
"Wanton misconduct" is:
the intentional doing of an act which one has a duty to refrain from doing or the intentional failure to do an act which one has a duty to do, in reckless disregard of the consequences and under such surrounding circumstances and conditions that a reasonable person would know, or should know, that such conduct would, in a high degree of probability, result in substantial harm to another.[15]
"Willful misconduct" is:
the intentional doing of an act which one has a duty to refrain from doing or the intentional failure to do an act which one has the duty to do when he or she has actual knowledge of the peril that will be created and intentionally fails to avert injury.[16]
These definitions would provide trial courts with the guidance they need to locate an agency's conduct within the PDA penalty range. Then using other factors the Supreme Court has identified, such as the plaintiff's economic loss, the trial court could more easily locate a violation of the PDA within the penalty range.
¶ 17 Therefore, using the WPI as a guide, the minimum statutory penalty should be *249 reserved for such "instances in which the agency has acted in good faith but, through an understandable misinterpretation of the PDA or failure to locate records, has failed to respond adequately."[17] Then, working up from the minimum amount on the penalty scale, instances where the agency acted with ordinary negligence would occupy the lower part of the penalty range. Instances where the agency's actions or inactions constituted gross negligence would call for a higher penalty than ordinary negligence, and instances where the agency acted wantonly would call for an even higher penalty. Finally, instances where the agency acted willfully and in bad faith would occupy the top end of the scale. Examples of bad faith would include instances where the agency refused to disclose information it knew it had a duty to disclose in an intentional effort to conceal government wrongdoing and/or to harm members of public. Such examples fly in the face of the PDA and thus deserve the harshest penalties. We decline to attach firm dollar amounts to these degrees of culpability, but offer them instead a guide for the trial court's exercise of discretion.
¶ 18 In this case, the trial court on remand imposed a penalty of $15 per day. In reaching its decision, the trial court relied heavily on a prior decision from this court, ACLU v. Blaine School District No. 503.[18] However, Blaine did not apply the approach we set forth here. Here, the Court of Appeals and the Supreme Court characterized King County's conduct as grossly negligent. In light of this finding, a penalty at the low end of the statutory range is unsustainable. We thus reverse and remand to the trial court for a determination of an appropriate penalty that is consistent with this opinion.[19]
WE CONCUR: ELLINGTON and BAKER, JJ.
NOTES
[1] Yousoufian v. King County Executive, 114 Wash.App. 836, 847, 60 P.3d 667 (2003).
[2] Yousoufian, 114 Wash.App. at 853, 60 P.3d 667.
[3] Yousoufian, 114 Wash.App. at 853-54, 60 P.3d 667.
[4] Yousoufian v. King County Executive, 152 Wash.2d 421, 438, 98 P.3d 463 (2004).
[5] Yousoufian, 152 Wash.2d at 438-39, 98 P.3d 463 (citations omitted).
[6] ACLU v. Blaine Sch. Dist. No. 503, 95 Wash. App. 106, 975 P.2d 536 (1999).
[7] King County also argues that Yousoufian's appeal should be dismissed as untimely. However, we previously rejected this argument in our order denying the county's motion to modify the Commissioner's January 20, 2006 ruling denying the county's motion to dismiss the appeal.
[8] Yousoufian, 152 Wash.2d at 438-39, 98 P.3d 463.
[9] Amren v. City of Kalama, 131 Wash.2d 25, 37, 929 P.2d 389 (1997).
[10] Amren, 131 Wash.2d at 37-38, 929 P.2d 389 (quoting Yacobellis v. City of Bellingham, 64 Wash.App. 295, 825 P.2d 324 (1992)); See also Yousoufian, 152 Wash.2d at 435, 98 P.3d 463.
[11] Yousoufian, 152 Wash.2d at 435, 98 P.3d 463.
[12] Yousoufian, 152 Wash.2d at 446-47, 98 P.3d 463 (J. Sanders dissenting in part) (emphasis in original).
[13] WPI 10.01.
[14] WPI 10.07.
[15] WPI 14.01.
[16] WPI 14.01.
[17] Yousoufian, 114 Wash.App. at 854, 60 P.3d 667.
[18] Blaine, 95 Wash.App. 106, 975 P.2d 536 (1999).
[19] King County submitted a motion to strike portions of the amicus brief filed in this case. The motion to strike is denied.