229 P.3d 735 (2010)
168 Wash.2d 444
Armen YOUSOUFIAN, Respondent,
v.
The OFFICE OF RON SIMS, King County, Executive, a subdivision of King County, a municipal corporation; the King County Department of Finance, a subdivision of King County, a municipal corporation; and the King County Department of Stadium Administration, a subdivision of King County, a municipal corporation, Petitioners.
No. 80081-2.
Supreme Court of Washington, En Banc.
Argued September 22, 2009.
Decided March 25, 2010.
*738 Stephen Paul Hobbs, H. Kevin Wright, John Robert Zeldenrust, David James Eldred, *739 King County Prosecutor's Office, Seattle, for Petitioners.
Michael G. Brannan, Law Office of Michael G. Brannan, Edmonds, Rand F. Jack, Brett & Coats, Bellingham, for Respondent.
Michele Lynn Earl-Hubbard, Christopher Roslaniec, Allied Law Group, L.L.C., Seattle, for Amici Curiae Aberdeen Daily World, Allied Daily Newspapers of Washington, Associated Press NW Bureau, Center for Justice, Everett Herald, KING 5, Peninsula Daily News, Skagit Valley Herald, Sound Publishing, TRI-City Herald, Walla Walla Union-Bulletin, Washington Association of Broadcasters, Washington Coalition for Open Government, Washington Newspaper Publishers Association & Wenatchee World.
Alan D. Copsey, Office of the Attorney General, for Amicus Curiae State of Washington.
ALEXANDER, J.
¶ 1 This appeal requires us to decide whether the Court of Appeals erred in concluding that the trial court on remand abused its discretion in imposing a $15 per day penalty against the Office of Ron Sims, King County Executive, for its noncompliance with the Public Records Act (PRA), chapter 42.56 RCW.[1] Although we previously entered a decision in this appeal, we later recalled our mandate. We now affirm with modification the decision of the Court of Appeals.

I
¶ 2 The facts found by the trial judge who originally heard this action and which were relied on by the trial court judge on remand are unchallenged and therefore are verities on appeal. Davis v. Dep't of Labor & Indus., 94 Wash.2d 119, 123, 615 P.2d 1279 (1980).[2] The summary of the facts of this case, as set forth hereafter, is based on those findings.
¶ 3 On May 30, 1997, Armen Yousoufian submitted a PRA request to King County. The request was prompted by remarks Yousoufian heard King County's then-executive, Ron Sims, give about an upcoming referendum in which voters would be asked to decide whether the county should finance the construction of a $300 million football stadium in downtown Seattle. Yousoufian's request was
for production of two distinct groups of records: (1) studies concerning how a "`fast food'" tax[, which was to be] used to finance a new stadium[,] would affect consumers, and (2) "`[a]ll file materials relating to, and including, the widely quoted `Conway Study' that many politicians have referred to in connection with the economic impacts of sports stadiums and any other such studies.'"
Clerk's Papers (CP) at 78-79. The trial court found that Yousoufian had obtained access to a 1994 "Conway study," absent attachments, one day before he filed his PRA request.
¶ 4 Yousoufian's records request was forwarded to "Office Manager" Pam Cole for a response. Id. at 31. On June 4, 1997, Cole acknowledged receipt of Yousoufian's PRA request and stated that the Conway study was available for immediate review but that archives would have to be searched for the other documents that Yousoufian was seeking. Although Cole said that the archive search would take approximately three weeks, she did not specifically inquire about the location of the other studies before responding to Yousoufian. The trial court *740 found that "much of Mr. Yousoufian's [PRA] request involved documentation not yet stored in Archives." Id. On June 10, Yousoufian was given access to the attachments to the 1994 Conway study as well as another study.
¶ 5 On June 18, 1997, Yousoufian sent a letter to the county in which he complained about what he said was the delay in furnishing him with the remaining documents that he had requested. His letter indicated that he believed that the fast food tax study should not have been archived because of its then-recent nature. In response, the county directed Yousoufian to request that study from the Washington State Restaurant Association. The county's response also indicated that Yousoufian would be contacted the following week regarding materials related to the Conway study that were purportedly being compiled. The trial court found no evidence to indicate that the county ever made the promised follow-up contact with Yousoufian.
¶ 6 Meanwhile, on June 12, 1997, Linda Meachum, who had taken over responsibility from Cole for managing Yousoufian's PRA request, forwarded the request to Susan Clawson in the King County Department of Stadium Administration. Meachum thereafter relied on Clawson to handle Yousoufian's request. Clawson then assigned the task to Steve Woo, her administrative assistant. At this time, Woo had no knowledge of the PRA or its requirements and had not received any training on how to respond to a PRA request. Meachum did not follow up with Clawson to ensure that Yousoufian received an adequate response to his request.
¶ 7 On July 15, 1997, Woo spoke with Yousoufian by telephone and informed him of a second Conway study, related to football, which was conducted in 1996. Woo sent this study to Yousoufian, along with information concerning the cost of the study and another study commissioned by the county. Woo did not include the cost documentation that Yousoufian had requested. Furthermore, some of the cost information Woo provided to Yousoufian was incorrect. The trial court found that it was "apparent from the correspondence that Mr. Woo did not carefully read nor ... understand Mr. Yousoufian's [PRA] request." Id. at 35.
¶ 8 On August 21, 1997, Yousoufian again wrote the county and reiterated his request for "`any and all reports on economic impacts of sports stadiums.'" Id. at 34. In response, Woo permitted Yousoufian to view four more studies. The trial court found that Woo incrementally released information, rather than releasing it all at one time, even after he realized that Yousoufian's request was for more information.
¶ 9 On August 27, 1997, the county sent a letter to Yousoufian that stated that his letter had been interpreted as a request for information relating only to baseball, thereby explaining why the county had initially only provided the 1994 Conway study. The trial court found that this explanation was not reasonable. The county's letter also stated that Meachum was searching the archives and asked if Yousoufian would like the stadium administration to search its archives as well. The trial court found that "[i]t was not reasonable to ask Mr. Yousoufian where to search for the documents responsive to his request." Id. at 36.
¶ 10 On October 2, 1997, Yousoufian sent the county another letter in which he indicated that he had still not received some of the documents that he had requested. In it he reiterated his request for cost documentation. Meachum responded on October 9, stating that her office had provided all the documents in its possession pertaining to Yousoufian's May 30 request. Meachum advised Yousoufian to be very specific in future PRA requests. On that same day, Yousoufian received a letter from the county, signed by Desiree Leigh. Leigh notified him that the archival search had been performed and responsive documents were being forwarded to the county's attorneys for their review. Her letter estimated that the documents would be available within two weeks. There was no evidence, however, that an archival search was ever performed or, if performed, why it took so long to complete. Also on October 9, Woo faxed a letter to Yousoufian explaining that two more studies could be found on the county's web site. Woo sent Yousoufian these studies on October 10, but *741 again he failed to provide cost documentation.
¶ 11 On October 14, 1997, Yousoufian wrote the county once again to express his confusion about the apparent conflict between the Meachum and Leigh letters. Oma LaMothe, a King County deputy prosecuting attorney, responded by letter in which she stated that she had reviewed Yousoufian's original request and believed it had been fully answered. She also stated that two boxes of documents had been retrieved that she believed were not relevant to Yousoufian's original request. She invited Yousoufian to view the documents. LaMothe ended her letter by commenting on the "difficulty" she had in interpreting Yousoufian's PRA request. Id. at 37. The trial court found that Yousoufian's request was clear, albeit "extremely broad," and "not vague or ambiguous." Id. at 30. After making several attempts to arrange a time to view the two boxes of documents, Yousoufian viewed them on October 28.
¶ 12 Having determined that he had still not received all of the documents he had requested from the county, Yousoufian hired an attorney. His attorney wrote to the county on December 8, 1997, and reiterated Yousoufian's May 30 request and requested "all documents ... relevant to the questions of who ordered each [cost] study, how they were ordered and what the cost was." Id. at 79.
¶ 13 On December 10, 1997, office manager Cole e-mailed Woo and others to request the cost documentation. Woo responded on December 12, listing the documents he had already provided to Yousoufian and stating that he believed he had completely responded to Yousoufian's request. The trial court found that Woo's response to Cole's e-mail "demonstrated his ignorance of the initial request." Id. at 38. Moreover, although Woo indicated that he would generate the additional information regarding the cost of the studies, the trial court found no evidence that he ever did so.
¶ 14 On December 15, 1997, John Wilson, Executive Sims's chief of staff, wrote Yousoufian's attorney and stated that the cost information provided by Woo satisfied Yousoufian's request. Wilson told Yousoufian to direct any further requests for information to the public facility district. On December 31, Yousoufian's attorney sent another letter to the county to explain that Yousoufian's request had not been adequately answered. Oma LaMothe responded on January 14, 1998, stating that the county was responsible only for providing documents within its office and that "`hundreds of hours'" had already been spent responding to Yousoufian's PRA request. Id. at 39. The trial court found LaMothe's response to be "factually and legally incorrect." Id.
¶ 15 Yousoufian's attorney wrote back to the county on March 6, 1998, reiterating the PRA request and inquiring into what, if any, exemptions the county might be claiming and whether any other agency might have the documents Yousoufian had requested. LaMothe responded and advised the attorney to write the county's finance department. Although Yousoufian's attorney did so, the finance department claimed it did not receive the letter. Yousoufian's attorney sent the letter again. LaMothe wrote back on June 22, this time as a representative of the finance department, stating that the department did not have the requested documents. The trial court found that the finance department did have the records.
¶ 16 Yousoufian filed this lawsuit on March 30, 2000. In February 2001, Pat Steele, who was recruited by the county to assist in locating documents responsive to Yousoufian's request, located more responsive documents. Those documents included records in the finance department relating to the financing of stadium studies. These documents had not been disclosed earlier and no evidence was presented by the county to explain why they could not have been provided in 1997.
¶ 17 By June 8, 2001  more than four years after Yousoufian submitted his initial request and over a year after he filed this lawsuit  Yousoufian received all of the studies and cost documentation he had originally requested.
¶ 18 It is fair to say that the unchallenged findings of fact demonstrate that over a period *742 of several years the county repeatedly failed to meet its responsibilities under the PRA with regard to Yousoufian's request. Specifically, the county told Yousoufian that it had produced all the requested documents, when in fact it had not. The county also told Yousoufian that archives were being searched and records compiled, when that was not correct. In addition, the county told Yousoufian that information was located elsewhere, when in fact that was not the case. After years of delay and misrepresentation on the part of the county, Yousoufian found it necessary to file suit against the county in order to obtain all of the requested documents. Nevertheless, it would still take another year for the county to completely and accurately respond to Yousoufian's request. As the trial court found, the county "failed to correctly interpret and respond to Mr. Yousoufian's [PRA] request" and "was untimely and unreasonable in its interpretation of and response to Mr. Yousoufian's [PRA] requests." Id. at 41, 31. Additionally, it found that "[w]ith proper diligence, all of the material untimely provided could and should have been provided in June or December of 1997." Id. at 41.
¶ 19 Based on the aforementioned findings of fact, the trial court concluded that "the County was negligent in the way it responded to Mr. Yousoufian's [PRA] request at every step of the way, and this negligence amounted to a lack of good faith." Id. at 46. The court also determined that the county could have complied with Yousoufian's PRA request within "five [business] days" following Yousoufian's initial request, but nevertheless concluded that the county did not act in "`bad faith' in the sense of intentional nondisclosure." Id. at 45.
¶ 20 The trial court calculated the per day penalty at $5 and the penalty period at 5,090 days. It multiplied those figures to arrive at a total penalty of $25,440. CP at 59. In determining the penalty period, the trial court categorized the wrongfully withheld records into 10 groups and subtracted 527 days from the cumulative number of days late for each of the 6 groups that were produced after the lawsuit was filed.[3] Through this formula, the trial court subtracted 3,162 days from the total number of days late of 8,252, calculating a penalty period of 5,090 days.
¶ 21 Yousoufian appealed this decision, and the Court of Appeals reversed the per day penalty, holding the court abused its discretion in awarding the statutory minimum in light of the county's "gross negligence." Yousoufian v. Office of King County Executive, 114 Wash.App. 836, 854, 60 P.3d 667 (2003) (Yousoufian I), aff'd in part, rev'd in part, 152 Wash.2d 421, 98 P.3d 463 (2004) (Yousoufian II).[4] It upheld the trial court's grouping of records and its subtraction of days from the penalty period. Id. at 849-51, 60 P.3d 667.
¶ 22 On review, this court agreed with the Court of Appeals that the $5 daily penalty "was unreasonable considering that the county acted with gross negligence" but held the Court of Appeals erred in affirming the trial court's reduction of the penalty period. Yousoufian II, 152 Wash.2d at 439, 98 P.3d 463. We remanded the case to the trial court for the imposition of penalties above the statutory minimum for each day the requested records were wrongfully withheld, including the days subtracted from the penalty period by the trial court, and for determination of attorney fees and costs for the appeal.
¶ 23 On remand, the trial court calculated the PRA penalty at $15 per day and multiplied *743 this figure by the 8,252 penalty days[5] to arrive at a total penalty of $123,780. Yousoufian appealed the daily penalty amount, and the Court of Appeals again reversed. Yousoufian v. Office of Ron Sims, 137 Wash. App. 69, 80-81, 151 P.3d 243 (2007) (Yousoufian III). We granted the county's petition for discretionary review. Yousoufian v. Office of Ron Sims, 162 Wash.2d 1011, 175 P.3d 1095 (2008).
¶ 24 Our opinion in this appeal was filed on January 15, 2009, and became final on February 4. Yousoufian v. Office of Ron Sims, 165 Wash.2d 439, 200 P.3d 232 (Yousoufian IV), recalled, Supreme Court Order No. 80081-2 (June 12, 2009). Our mandate issued on February 9. Supreme Court Mandate No. 80081-2 (Feb. 9, 2009). On April 1, the county moved this court to recall our mandate in Yousoufian IV. With Justices Richard Sanders and Debra Stephens recused, and Judge Karen Seinfeld sitting as a justice pro tempore, we granted the county's motion in part, recalled the mandate, and ordered this matter "set for oral argument in due course." Supreme Court Order No. 80081-2 (June 12, 2009). Justice Sanders later recused himself "from consideration of any further matter in this proceeding." Supreme Court Mem. on Recusal No. 80081-2 (July 2, 2009).

II
¶ 25 "[T]he trial court's determination of appropriate daily penalties is properly reviewed for an abuse of discretion." Yousoufian II, 152 Wash.2d at 431, 98 P.3d 463. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006). A trial "court's decision is `manifestly unreasonable' if `the court, despite applying the correct legal standard to the supported facts, adopts a view "that no reasonable person would take."'" Id. (quoting State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Lewis, 115 Wash.2d 294, 298-99, 797 P.2d 1141 (1990))).

III
¶ 26 Determining a PRA penalty involves two steps: "(1) determine the amount of days the party was denied access and (2) determine the appropriate per day penalty between $5 and $100 depending on the agency's actions." Yousoufian II, 152 Wash.2d at 438, 98 P.3d 463 (citing Lindberg v. Kitsap County, 133 Wash.2d 729, 749, 948 P.2d 805 (1997) (Durham, C.J., dissenting)). The first step has been decided, and we have not been asked to reconsider that determination. We are, however, reviewing the second step  whether the Court of Appeals correctly concluded that on remand the trial court abused its discretion in setting the penalty at $15 per day.
¶ 27 The lengthy procedural history of this case is illustrative of the challenge faced by trial courts performing the second step of a PRA penalty analysis. This difficulty arises in part because the PRA provides no specific indication of how a standard range penalty is to be calculated.[6]
¶ 28 Our court has stated that the PRA penalty is designed to "`discourage improper denial of access to public records and [encourage] adherence to the goals and procedures dictated by the statute.'" Yousoufian *744 II, 152 Wash.2d at 429-30, 98 P.3d 463 (alteration in original) (quoting Hearst Corp. v. Hoppe, 90 Wash.2d 123, 140, 580 P.2d 246 (1978)). "When determining the amount of the penalty to be imposed `the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider.'" Amren v. City of Kalama, 131 Wash.2d 25, 37-38, 929 P.2d 389 (1997) (alteration in original) (quoting Yacobellis v. City of Bellingham, 64 Wash.App. 295, 303, 825 P.2d 324 (1992)). However, no showing of bad faith is necessary before a penalty is imposed on an agency and an agency's good faith reliance on an exemption does not insulate the agency from a penalty. Id. at 36-37, 929 P.2d 389.
¶ 29 There are other considerations that bear on the determination of a penalty in addition to good faith or bad faith. They are factors, discussed below, relating to the basis for setting PRA penalties: agency culpability. See Yousoufian II, 152 Wash.2d at 435, 98 P.3d 463 ("the [PRA's] purpose [of] promot[ing] access to public records ... is better served by increasing the penalty based on an agency's culpability").
¶ 30 In setting the penalty on remand at $15 per day, the trial court relied on American Civil Liberties Union v. Blaine School District No. 503, 95 Wash.App. 106, 975 P.2d 536 (1999) (ACLU), analogizing the county's conduct here to that of the Blaine School District in that case. CP at 127. In ACLU, the records showed that the Blaine School District had refused to mail certain documents to the ACLU based on its incorrect interpretation of the PRA. The Blaine School District, instead, indicated that the requested documents would be available for viewing during business hours. Although the trial court set the penalty for the violations at $5 per day, the Court of Appeals vacated the award and set the penalty at $10 per day on the basis that "it [was] clear that the District did not act in good faith." Id. at 115, 975 P.2d 536.
¶ 31 We do not find ACLU to be analogous to the present case because the school district's conduct in ACLU, promptly making records available but refusing to mail them, is fundamentally different from the county's conduct in the instant case. Moreover, as the Court of Appeals correctly concluded in Yousoufian III, a strict and singular emphasis on good faith or bad faith is inadequate to fully consider a PRA penalty determination after our decision in Yousoufian II. Yousoufian III, 137 Wash.App. at 78-79, 151 P.3d 243.[7] Thus, the trial court should not have viewed ACLU as guiding precedent in calculating the penalty here.
¶ 32 In addition to ACLU, the trial court was guided by consideration of two factors: economic loss to the party requesting the documents and the public importance of the underlying issue to which the request relates. As to the first factor, in Amren, our court stated that economic loss is a relevant consideration. Amren, 131 Wash.2d at 38, 929 P.2d 389 (citing Yacobellis, 64 Wash.App. at 303, 825 P.2d 324). Yousoufian contends, however, that economic loss should not be a factor because the purpose of a PRA penalty is to promote access to public records and government transparency; it is not meant as compensation for damages. Suppl. Br. of Resp't at 8-10; see Yousoufian II, 152 Wash.2d at 429, 435, 98 P.3d 463; see also Yacobellis, 64 Wash.App. at 301, 825 P.2d 324. We are not persuaded by this argument because an additional purpose of a PRA penalty, recognized by both parties, is "`"to discourage improper denial of access to public records"'" Suppl. Br. of Resp't at 10 (quoting Yousoufian II, 152 Wash.2d at 429-30, 98 P.3d 463 (quoting Hearst Corp., 90 Wash.2d at 140, 580 P.2d 246)). Accordingly, it is appropriate to increase penalties as a deterrent where an agency's misconduct causes a requestor to sustain actual personal economic loss. An agency should, though, be penalized for such a loss only if it was a foreseeable result of *745 the agency's misconduct.[8] In short, actual personal economic loss to the requestor is a factor in setting a penalty only if it resulted from the agency's misconduct and was foreseeable. Here, the trial court correctly declined to apply this factor because "there has been no assertion that Mr. Yousoufian sustained any personal economic loss because of the County's intransigence." CP at 126.
¶ 33 As to the second factor, the trial court correctly reasoned that governmental intransigence on an issue of public importance is a relevant consideration in establishing the penalty for PRA a violation. Indeed, the county agrees that a penalty should reflect the significance of the project to which the PRA request relates. We believe, however, that the county goes too far in suggesting that this factor does not come into play unless there is actual public harm. Assessing a penalty under the PRA should not be contingent on uncovering the proverbial "smoking gun." See RCW 42.56.030; see also Spokane Research & Def. Fund v. City of Spokane, 155 Wash.2d 89, 100, 117 P.3d 1117 (2005) ("We interpret the [PRA] liberally to promote full disclosure of government activity that the people might know how their representatives have executed the public trust placed in them and so hold them accountable.").
¶ 34 An agency should not be penalized under this factor, however, unless the significance of the issue to which the request is related was foreseeable to the agency. Here, the requested records dealt with a $300 million, publicly financed project that was subject to an upcoming referendum. The importance of the referendum was obvious and foreseeable to the county when Yousoufian made his initial request; the lack of actual public harm resulting from the county's misconduct is irrelevant to its penalty.
¶ 35 Finally, the trial court failed to consider deterrence as a factor in determining the penalty. As noted, the purpose of the PRA's penalty provision is to deter improper denials of access to public records. Yousoufian II, 152 Wash.2d at 429-30, 98 P.3d 463. The penalty must be an adequate incentive to induce future compliance. Yet nowhere did the trial court mention deterrence. What is more, as Yousoufian points out, the trial court implicitly averted the deterrence factor by analogizing to ACLU. Br. of Appellant at 16. In ACLU, the agency in question was a small school district, but here the county is the most populous county in the state. The penalty needed to deter a small school district and that necessary to deter a large county may not be the same.
¶ 36 To conclude, the trial court on remand based its assessment on the county's "`gross negligence'" but failed to impose a penalty proportionate to the county's misconduct. CP at 125. Instead, it imposed a penalty at the low end of the penalty range. As recognized in Yousoufian II, 152 Wash.2d at 439, 98 P.3d 463, such a low penalty is inappropriate and manifestly unreasonable in light of the county's grossly negligent noncompliance with the PRA. We hold the trial court on remand abused its discretion in imposing a penalty of $15 per day.

IV

A
¶ 37 We agree with the Court of Appeals that "the purposes of the [PRA] would be better served by providing the trial courts with some guidance as to ... the [PRA] penalty range." Yousoufian III, 137 Wash. App. at 78, 151 P.3d 243 (discussing our court's reference to culpability in Yousoufian II, 152 Wash.2d at 435, 98 P.3d 463). The Court of Appeals proposed tiering the statutory per day penalty range based on the *746 degrees of culpability found in the Washington Practice: Washington Pattern Jury Instructions. Id. at 78-80, 151 P.3d 243 (suggesting the culpability tiers provide the baseline from which the trial court applies other factors to determine the appropriate penalty). As both parties point out, however, the Court of Appeals' approach is inadequate because culpability definitions do not lend themselves to the complexity of PRA penalty analysis.
¶ 38 The parties and amicus Allied Daily Newspapers et al. (ADN) agree that a nuanced multifactor approach is more appropriate to a PRA penalty determination. Answer to Brs. of Amicus Curiae at 1-3; Resp't's Answer to State's Amicus Br. at 8-9; Br. of ADN at 19. The county advocates a three-factor framework to penalty determinations, enumerating eight additional considerations to be included within those factors. Answer to Brs. of Amicus Curiae at 2-3. Yousoufian proposes a 10-factor approach. Resp't's Answer to State's Amicus Br. at 8-9. ADN suggests 12 factors. Br. of ADN at 19.
¶ 39 In contrast, the State of Washington (the State), as amicus, contends that we should not adopt any factors, asserting in part that "traditional abuse of discretion review has well served the [PRA]." Amicus Br. of the State at 4. The State's argument is unpersuasive for two reasons. First, only three published cases have reviewed a PRA penalty for its sufficiency. See Yousoufian II, 152 Wash.2d at 439, 98 P.3d 463; Lindberg, 133 Wash.2d at 746-47, 948 P.2d 805 (upholding a trial court's order awarding a combination of attorney fees and penalties); ACLU, 95 Wash.App. at 115, 975 P.2d 536. Given the paucity of published cases relating to penalty after nearly four decades of PRA case law, the abuse of discretion standard is insufficient guidance for trial courts.
¶ 40 Second, the State pays insufficient attention to the procedural history of this case. This is the second time our court has reviewed the sufficiency of the penalty that has been imposed by the trial court. Furthermore, more than 12 years have passed since Armen Yousoufian submitted his PRA request to the county and 9 years have gone by since he filed this lawsuit. This suggests to us that we need to provide additional guidance on the setting of PRA penalty amounts. Hence, this review provides an appropriate opportunity to set forth relevant factors for trial courts to consider in their penalty determination. Cf. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 271-72, 884 P.2d 592 (1994) (declining invitation by both parties to create a PRA penalty standard because case was before the court on summary judgment and was remanded by the court for factual determination).
¶ 41 Appellate courts frequently set forth multifactor frameworks to provide guidance to trial courts exercising their discretion so as to render those decisions consistent and susceptible to meaningful appellate review. See, e.g., Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 595, 675 P.2d 193 (1983) (adopting an analytical framework to calculate reasonable attorney fees under the Consumer Protection Act, chapter 19.86 RCW); Glover v. Tacoma Gen. Hosp., 98 Wash.2d 708, 717, 658 P.2d 1230 (1983) (identifying factors as proper considerations for trial judges to use in determining whether settlement agreements involving multiple defendants and contributory fault are "reasonable" under RCW 4.22.060), overruled on other grounds by Crown Controls, Inc. v. Smiley, 110 Wash.2d 695, 756 P.2d 717 (1988). Such frameworks are appropriate where a statute affords discretion to trial judges but fails to adequately guide how such discretion should be exercised. See, e.g., Bowers, 100 Wash.2d at 594, 675 P.2d 193 (noting the Consumer Protection Act "provide[d] no specific indication of how attorney fees [were] to be calculated," but exhorted courts "to liberally construe the act, `that its beneficial purposes may be served'."); Glover, 98 Wash.2d at 716, 658 P.2d 1230 (observing that "the Legislature [has] declined to define [the term `reasonable']" despite the "great importance" of the reasonableness determination "to both settling and nonsettling defendants")
¶ 42 Here, as mentioned, the PRA provides no specific indication of how a penalty is to be calculated. It does, however, provide a "strongly worded mandate for *747 broad disclosure of public records." Hearst Corp., 90 Wash.2d at 127, 580 P.2d 246. The PRA directs us to liberally construe it "to assure that the public interest will be fully protected." RCW 42.56.030. Its command is unequivocal: "Responses to requests for public records shall be made promptly by agencies. ..." RCW 42.56.520 (emphasis added). Additionally, where the PRA is violated, trial courts must award penalties "at not less than $5 [per day] but not more than $100 [per day]." Yousoufian II, 152 Wash.2d at 433, 98 P.3d 463. The PRA is a forceful reminder that agencies remain accountable to the people of the State of Washington:
The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected. In the event of conflict between the provisions of this chapter and any other act, the provisions of this chapter shall govern.
RCW 42.56.030. It is therefore proper for us to identify factors that trial courts may appropriately consider in determining PRA penalties.
¶ 43 At the outset of any penalty determination, a trial court must consider the entire penalty range established by the legislature. See Laws of 1992, ch. 139, § 8 (amending the penalty from a $25 per day limit to the current $5-$100 per day range). This eliminates the perception of bias associated with presuming any "starting point" within the statutory range for penalty determinations. Such a presumption is unsupported by the PRA because its penalty provision does not prescribe how trial courts are to determine a penalty; it merely sets the minimum and maximum per day amounts. See RCW 42.56.550(4). We accordingly reject the suggestion of ADN that trial courts should begin their penalty determinations at $52.50, the midpoint of the statutory range. Br. of Amicus ADN et al. (Aug. 21, 2006) at 16 (quoting Yousoufian II, 152 Wash.2d at 446, 98 P.3d 463 (Sanders, J., dissenting)). Trial courts may exercise their considerable discretion under the PRA's penalty provisions in deciding where to begin a penalty determination. RCW 42.56.550(4).[9]
¶ 44 Turning to the factors, we decline to adopt any of the aforementioned frameworks suggested by the parties or ADN, though we do incorporate some factors from each. In our view, mitigating factors that may serve to decrease the penalty are (1) a lack of clarity in the PRA request, (2) the agency's prompt response or legitimate follow-up inquiry for clarification,[10] (3) the agency's good faith,[11] honest, timely, and strict compliance with all PRA procedural requirements and exceptions, (4) proper training and supervision of the agency's personnel, (5) the reasonableness of any explanation for noncompliance by the agency, (6) the helpfulness of the agency to the requestor,[12] and (7) the existence of agency systems to track and retrieve public records.
*748 ¶ 45 Conversely, aggravating factors that may support increasing the penalty are (1) a delayed response by the agency, especially in circumstances making time of the essence,[13] (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions, (3) lack of proper training and supervision of the agency's personnel, (4) unreasonableness of any explanation for noncompliance by the agency, (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency, (6) agency dishonesty, (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency,[14] (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency, and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.
¶ 46 Our multifactor analysis is consistent with the PRA and our precedents and provides guidance to trial courts, more predictability to parties, and a framework for meaningful appellate review. We emphasize that the factors may overlap, are offered only as guidance, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations. Additionally, no one factor should control. These factors should not infringe upon the considerable discretion of trial courts to determine PRA penalties.

B
¶ 47 Where an appellate court holds that a trial court abused its discretion in awarding a PRA penalty, the usual procedure is to remand to the trial court for imposition of the appropriate penalty. Nevertheless, in light of the unique circumstances and procedural history of this case, we are inclined to set the daily penalty amount in order to bring this dispute to a close.[15] We hold that based upon the aforementioned factors the appropriate penalty is $45 per day.
¶ 48 We emphasize that it is incorrect to interpret our decision to set the per day penalty as an invitation from this court to trial courts to accede to having penalties set at the appellate court level. It is generally not the function of an appellate court to set the penalty and "the determination of the appropriate per day penalty is within the discretion of the trial court." Yousoufian II, 152 Wash.2d at 439, 98 P.3d 463.

V
¶ 49 Yousoufian properly requests an award of attorney fees and costs incurred in connection with this appeal. RAP 18.1(a); Br. of Appellant at 23. RCW 42.56.550(4) authorizes "all costs, including reasonable attorney fees" to be awarded to "[a]ny person who prevails" in a PRA case. Because we hold that Yousoufian prevails in his appeal of the trial court's decision on remand to set the PRA penalty at $15 per day, he is entitled to recover reasonable attorney fees and the costs he has incurred in connection with this appeal.

VI
¶ 50 Finally, we reverse the portion of the Court of Appeals' decision denying the county's motion to strike portions of an amicus *749 brief as noncompliant with RAP 9.11 and RAP 10.3. Spokane Research & Def. Fund, 155 Wash.2d at 98, 117 P.3d 1117 ("`[W]e cannot, while deciding one case, take judicial notice of records of other independent and separate judicial proceedings. ...'" (quoting In re Adoption of B.T., 150 Wash.2d 409, 415, 78 P.3d 634 (2003))); id. ("`RAP 9.11 restricts appellate consideration of additional evidence on review.'" (quoting King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 549 n. 6, 14 P.3d 133 (2000))); United States v. Hoffman, 154 Wash.2d 730, 735 n. 3, 116 P.3d 999 (2005) (amicus briefs must comply with RAP 10.3).
¶ 51 We likewise grant the county's motion to strike portions of the amicus brief of ADN filed in this court referencing unpublished superior court decisions. Answer to Brs. of Amicus Curiae at 8-10; Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 577 n. 10, 964 P.2d 1173 (1998) ("Unpublished opinions have no precedential value and, therefore, we have not considered them." (citing State v. Bays, 90 Wash.App. 731, 954 P.2d 301 (1998))).
¶ 52 For the same reason, we also grant the parties' motions to strike portions of the State's amicus brief citing to and referencing an unpublished superior court decision. Answer to Brs. of Amicus Curiae at 9-10; Resp't's Answer to State's Amicus Br. at 10 n.3. Consequently, we do not reach Yousoufian's motion in the alternative for our court to take judicial notice of the transcript from the unpublished superior court decision. Resp't's Answer to State's Amicus Brief at 11.

VII
¶ 53 In conclusion, we affirm but modify the Court of Appeals' decision. Because of the unique circumstances of this case, we do not remand to the trial court for redetermination of the penalty. Instead, we set the penalty at $45 per day for 8,252 days. We accordingly award Yousoufian a total PRA penalty of $371,340 plus reasonable attorney fees and costs incurred in connection with this appeal.
WE CONCUR: CHARLES W. JOHNSON, JAMES M. JOHNSON, TOM CHAMBERS, JJ. and J. DEAN MORGAN, J. Pro Tem.
OWENS, J. (dissenting).
¶ 54 The Public Records Act (PRA), chapter 42.56 RCW,[1] penalty in this case was by all accounts the largest ever assessed under the PRA. Nevertheless, the majority considers this award so inappropriately low that it finds an abuse of discretion and triples the award. The proposition in this case is simple: either this court will respect the trial court's discretion or it will not. The trial court awarded a reasonable penalty of $15 per day based on sound legal authority and a careful examination of the facts. The majority finds an abuse of discretion. I respectfully dissent.

Abuse of Discretion
¶ 55 The PRA puts penalty calculations squarely within the trial court's discretion: "[I]t shall be within the discretion of the court to award [the prevailing plaintiff] an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." RCW 42.56.550(4).
¶ 56 A trial court abuses its discretion when it makes a decision that is manifestly unreasonable or based on untenable reasons. Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006). A trial court's decision is manifestly unreasonable if it takes a view no reasonable person would take. Id. A decision rests on untenable reasons if it is the result of an incorrect standard or facts that do not meet the correct standard. In re Marriage of Littlefield, 133 Wash.2d 39, 47, 940 P.2d 1362 (1997).
¶ 57 The trial court in this case awarded a reasonable penalty of $15 per day based on sound legal authority and a careful examination of the facts. The trial court carefully *750 considered three factors in reaching its judgment. First, the trial court considered American Civil Liberties Union v. Blaine School District No. 503, 95 Wash.App. 106, 975 P.2d 536 (1999) (ACLU). Clerk's Papers (CP) at 125-27. In ACLU, the defendant, Blaine School District, refused to mail copies of public documents to the ACLU, mischaracterized the size of the ACLU's document request and the time it would take to fulfill it, and even stated outright in a letter from its superintendent that it did not want to help the ACLU prepare a legal case against the government. Id. at 112-14, 975 P.2d 536. Division One of the Court of Appeals assessed a $10 per day penalty against the school district. Id. at 115, 975 P.2d 536. In this case, the trial court considered ACLU's ruling as a factor in its decision to assess a $15 per day penalty against King County. CP at 127 ("[T]his court does not regard the County's conduct to be significantly more egregious than that of the school district in [ACLU]."). The trial court acted reasonably in considering ACLU as a factor. The county's conduct in this case is not identical to the Blaine School District's conduct in ACLU, but neither is it overwhelmingly dissimilar: like the trial court in this case, the ACLU court found that the defendant school district did not act in good faith, ACLU, 95 Wash. App. at 115, 975 P.2d 536, even finding "startling evidence of the District's improper motives," id. at 113, 975 P.2d 536.
¶ 58 The majority quibbles with the extent to which ACLU is analogous to the present case, finding that the trial court should not have considered ACLU as a factor in assessing its penalty. Majority at 744. However, the majority should not exercise de novo review when the standard is abuse of discretion. The question here is whether a reasonable trial judge could properly consider ACLU as a factor. See Mayer, 156 Wash.2d at 684, 132 P.3d 115. The trial judge acted reasonably and that should be the end of the matter.
¶ 59 Second, the trial court reasonably considered Yousoufian's personal economic loss and the public importance of the records request at issue. CP at 126-27. When considering economic loss, the trial court relied on Amren v. City of Kalama, 131 Wash.2d 25, 929 P.2d 389 (1997), but found that Yousoufian suffered no personal economic loss in this case. CP at 126. The majority agrees that the trial court properly considered this factor. Majority at 744-45. When considering the public importance of the records request, the trial court found that the request was of great public importance but de-emphasized this factor because there was no actual public harm. CP at 126-27. The trial court did this in part because there was no case law to guide it in any other direction. Id. The majority would have applied this factor differently if it were the trial judge. Majority at 745. But the majority is not the trial judge. The standard of review is abuse of discretion, not de novo. The trial judge did not act unreasonably in weighing personal economic loss and public importance and so there is no abuse of discretion.
¶ 60 Finally, the trial court based its judgment on a careful examination of the facts. In examining the facts, the trial court properly considered a factor the majority does not. The majority's main complaint about the trial court's penalty is that $15 per day is not proportionate to the county's "gross negligence." Id. at 745. But gross negligence is a finding of fact, see Swartley v. Seattle School Dist. No. 1, 70 Wash.2d 17, 23, 421 P.2d 1009 (1966), and the original trial court in this case never found gross negligence. CP at 124-25. Rather, the original trial court found that the county was "negligent at every step of the way." Id. at 124. On appeal, the Court of Appeals characterized the county's conduct as grossly negligent without explicitly reversing the trial court's factual finding of ordinary negligence. See Yousoufian v. Office of King County Executive, 114 Wash.App. 836, 853, 60 P.3d 667 (2003), aff'd in part and rev'd in part on other grounds, 152 Wash.2d 421, 98 P.3d 463 (2004). This was a mistake. See In re Estate of Jones, 152 Wash.2d 1, 8, 93 P.3d 147 (2004) ("On review, unchallenged findings of fact are verities on appeal."). This court never questioned the Court of Appeals' mistake. On remand, the trial judge was acutely aware that the appeals courts had treated negligence and gross negligence as one and *751 the same. Transcript of Proceedings (TR) (Aug. 19, 2005) at 6-14, 32-39.
¶ 61 This is a mistake for two reasons. First, negligence and gross negligence are simply different concepts. "Negligence is the failure to exercise reasonable or ordinary care." Gordon v. Deer Park Sch. Dist. No. 414, 71 Wash.2d 119, 122, 426 P.2d 824 (1967); see 6 Washington Practice: Washington Pattern Jury Instructions: Civil 10.01 (5th ed. 2005 & Supp. 2009) (WPI). In contrast, "gross negligence is the want of slight care" and is substantially greater than ordinary negligence. Miller v. Treat, 57 Wash.2d 524, 532, 358 P.2d 143 (1960); see 6 WPI 10.07. Second, it is incorrect to assume that negligence over a long period of time, or "negligen[ce] at every step of the way," CP at 124, amounts to gross negligence in the PRA context. This assumption would penalize the county twice for the same conduct. If negligence over a long period of time is gross negligence, then the higher culpability of gross negligence would result in a higher per day penalty for the county. But the duration of the negligence is already factored into the county's penalty through the multiplier for number of days. Thus, the county would be penalized twice for the duration of its negligence. This is an unfair result. Negligence and gross negligence are different culpability levels, and it would be a mistake to treat them as the same.
¶ 62 On remand, the trial judge grilled counsel for both sides on the difference between ordinary and gross negligence. TR (Aug. 19, 2005) at 6-14, 32-39. Ultimately, he felt bound by the Court of Appeals' and the Supreme Court's characterizations and based his penalty award of $15 per day on a culpability of gross negligence. CP at 125, 27. However, he was cognizant of the original unchallenged finding of ordinary negligence. Id. at 125. We rely on trial courts to carefully examine facts. We should not find that they abuse their discretion simply by getting their facts right where higher courts get them wrong. Nor should we perpetuate a mistake simply because we did not catch it the first time around.[2] The trial court was cognizant of the original unchallenged finding of ordinary negligence in its culpability analysis and accordingly assessed a penalty of $15 per day. The majority might have found those facts differently or awarded a different penalty in its own discretion. But PRA penalties are not within this court's discretion. The trial court acted reasonably based on its examination of the facts and did not abuse its discretion.
¶ 63 After finding an abuse of discretion, the majority takes the largest PRA award in state history and triples it. This outsized award tramples the trial court's discretion. Further, the majority fails to provide any reasoning whatsoever to support its $45 per day award  failing even to apply its own 16-part test to the facts. In short, the majority creates a world of standards and then refuses to live in it. The majority's $45 per day award is a naked exercise of discretion. We should reject it and affirm the trial court.

Conclusion
¶ 64 The trial court made a reasonable penalty award of $15 per day based on the sound legal authority in ACLU, a consideration of personal economic loss and the public importance of the request, and a careful examination of the facts that revealed an unchallenged finding of ordinary negligence. The majority's reversal of the trial court might be proper under de novo review but that is not the standard in this case. The legislature put PRA penalties at the trial court's discretion, and we should second-guess that discretion only when it is abused  not simply when we would have exercised it differently. I respectfully dissent.
WE CONCUR: BARBARA A. MADSEN, C.J., MARY E. FAIRHURST, J. and KAREN G. SEINFELD, J. Pro Tem.
NOTES
[1] The legislature recodified the provisions in chapter 42.17 RCW pertaining to public records at chapter 42.56 RCW. Laws of 2005, ch. 274, § 1. This opinion refers to the new chapter by its preferred name, the "Public Records Act." RCW 42.56.020.
[2] The findings of fact entered by King County Superior Court Judge J. Kathleen Learned have subsequently been set forth in three published appellate opinions. See Yousoufian v. Office of King County Executive, 114 Wash.App. 836, 840-46, 60 P.3d 667 (2003) (Yousoufian I), aff'd in part, rev'd in part, 152 Wash.2d 421, 98 P.3d 463 (2004) (Yousoufian II); Yousoufian v. Office of Ron Sims, 137 Wash.App. 69, 71-75, 151 P.3d 243 (2007) (Yousoufian III), aff'd in part, rev'd in part, 165 Wash.2d 439, 200 P.3d 232 (Yousoufian IV), recalled, Supreme Court Order No. 80081-2 (June 12, 2009). These findings also formed the basis for the ruling of King County Superior Court Judge Michael Hayden, who was assigned to this matter on remand due to Judge Learned's retirement from the King County Superior Court. Clerk's Papers at 124.
[3] The trial court determined that 647 days passed between the date of the last letter from the county to Yousoufian prior to the commencement of this lawsuit and the date Yousoufian filed suit. It allowed 120 days as a reasonable amount of time for Yousoufian to find an attorney to represent him in this lawsuit. Subtracting 120 days from 647 days, the trial court arrived at the figure of 527 days.
[4] As correctly noted by the trial court in its order on remand: "The Court [of Appeals] found that the `factual and legal misrepresentations the County made were grossly negligent' and attributed the finding to [the original trial court's] `characterization' of the County's conduct although the term `gross negligence' does not appear in the trial court order." CP at 125 (quoting Yousoufian I, 114 Wash.App. at 853-54, 60 P.3d 667).
[5] The trial court on remand arrived at 8,252 days by adding 3,162 days to the penalty period of 5,090 days calculated by the original trial court. In Yousoufian II, our court reinstated the 3,162 days the original trial court subtracted from the total days late to arrive at the penalty period. Yousoufian II, 152 Wash.2d at 438, 98 P.3d 463 (holding that "the [PRA] does not allow a reduction of the penalty period when the trial court finds the plaintiff could have filed suit earlier than it did"). The parties do not challenge the penalty period of 8,252 days calculated by the trial court on remand.
[6] RCW 42.56.550(4) provides: "Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record."
[7] The Court of Appeals accurately observed: "[A] simple emphasis on the presence or absence of the agency's bad faith does little more than to suggest what the two poles are on the penalty range and is inadequate to guide the trial court's discretion in locating violations that call for a penalty somewhere in the middle of the expansive range the legislature has provided." Yousoufian III, 137 Wash.App. at 78-79, 151 P.3d 243.
[8] Amici the State of Washington (the State) and Allied Daily Newspapers, et al. (ADN) contend that personal economic loss should not be a factor in part because it does not relate to an agency's culpability. Br. of ADN at 6-7; Amicus Br. of the State at 8, 11-12. We disagree. This factor may relate to an agency's culpability, and thus is an appropriate factor, where the agency has knowledge that its misconduct could potentially cause economic loss to the requestor. Although an agency may generally not know of the potential for such loss because the PRA provides that requestors "shall not be required to provide information as to the purpose for the request," RCW 42.56.080, it is possible that an agency could acquire such knowledge.
[9] Therefore, depending upon the circumstances of a case, it may be within a trial court's discretion to begin a penalty determination at the minimum daily penalty amount of $5, as the county argues trial courts should be free to do. Answer to Brs. of Amicus Curiae at 6.
[10] RCW 42.56.520 gives agencies five days to respond by either producing the documents, giving a time needed to produce the documents, requesting a clarification of the request, or denying portions pursuant to exceptions. Furthermore, RCW 42.56.550(2) specifically grants the public the right to ask a court to review an agency's inaction if its estimate of the time needed to produce a record is unreasonable.
[11] Good faith, while not a shield against the imposition of a penalty, is a factor to be taken into account in setting the amount. Amren, 131 Wash.2d at 38, 929 P.2d 389.
[12] RCW 42.56.100 states that "rules and regulations shall provide for the fullest assistance to inquirers and the most timely possible action on requests for information." (Emphasis added.)
[13] For instance, delaying production of documents long past their ability to influence a public vote defeats the PRA's purpose of keeping people informed "so that they may maintain control over the instruments that they have created." RCW 42.56.030.
[14] RCW 42.56.550(3) states that records may not be withheld because they may cause "embarrassment to public officials."
[15] At the first oral argument in this matter, both parties asked our court to set the penalty. Wash. Supreme Court oral argument, Yousoufian v. Office of Ron Sims, No. 80081-2 (Feb. 26, 2008) at 35 min., 30 sec., and 37 min., 35 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. At the second oral argument, Yousoufian renewed his request while the county indicated that it no longer wanted the penalty to be set by this court. Wash. Supreme Court oral argument, Yousoufian v. Office of Ron Sims, No. 80081-2 (Sept. 22, 2009) at 36 min., 50 sec., and 40 min., 25 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org.
[1] In 2005, the provisions in chapter 42.17 RCW pertaining to public records were recodified at chapter 42.56 RCW. Laws of 2005, ch. 274, § 1.
[2] "`Wisdom too often never comes, and so one ought not to reject it merely because it comes late.'" State v. Daniels, 165 Wash.2d 627, 629, 200 P.3d 711 (Sanders, J., dissenting) (quoting Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 600, 69 S.Ct. 290, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting)), cert. denied, ___ U.S. ___, 130 S.Ct. 85, 175 L.Ed.2d 28 (2009).